UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nathan Christopher Braun,                    Case No. 18-cv-3355 (JNE/ECW)

Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Dennis Hanson, *et al.*,

Defendants.

This case is before the Court on Defendants' Motion to Dismiss (Dkt. 28) and Plaintiff Nathan Christopher Braun's Motion to Object to Defendants' Motion to Dismiss (Dkt. 38). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends granting in part and denying in part Defendants' Motion to Dismiss and denying Braun's Motion to Object.

    **I.**        **PROCEDURAL BACKGROUND**

Braun filed suit on December 10, 2018. (Dkt. 1.) The Court ordered Braun to pay an initial partial filing fee before his suit could proceed. (Dkt. 3.) The Court also noted some deficiencies in Braun's Complaint. (*Id.* at 3-4 n.2.) Braun then filed an Amended Complaint. (Dkt. 4.) The Court again noted deficiencies in Braun's Amended Complaint in that he pleaded little factual support for his claims. (Dkt. 8.) Braun was permitted an opportunity to correct these defects. (Dkt. 8 at 4.)

Braun filed his Second Amended Complaint on May 24, 2019. (Dkt. 9.) Defendants then moved to dismiss. (Dkt. 28.) Braun did not substantively respond to the motion, but instead requested appointment of counsel. (Dkts. 33, 34.) The Court denied Braun's request and set a briefing schedule on the Motion to Dismiss. (Dkt. 36.) Braun then filed his Motion to Object, which included arguments in response to the Motion to Dismiss. (Dkts. 38, 39.) The parties completed their briefing and this matter is ripe for determination. (Dkts. 38, 39, 42.)

## II.   FACTUAL BACKGROUND

According to the Second Amended Complaint, on February 5, 2018, Braun notified Defendants Steve Kriha and Carolyn Skrypek that he was beginning a hunger strike. (Dkt. 9 ¶ A.) Braun also provided written notice of his hunger strike to Defendant Kathy Halverson. (*Id.*) Braun would not eat or drink until prison officials held a press conference to "admit[] to the unlawful acts they had been commit[t]ing." (*Id.*)

Braun asserts that in response to his hunger strike declaration, Defendants Dennis Hanson, Justin DeMars, Christopher Mitchell, Anthony Sunde, Scott Eitel, Michael Gephart, Eric Meemken, Lisa Meyer, Benjamin Sutlief, and Fergus Gavin placed him in another cell where he was "deprived of all legal mail/materials and denied access to shower." (*Id.* ¶ B.) Braun was "completely compliant" while being moved to that new cell, but the ten defendants moving him:

> dislocated [Braun's] shoulder, administered chemical deter[r]ant twice, pushed [Braun] down a flight of stairs, broke bones in [Braun's] wrist that has caused continued nerve damage, caused a dis[c] in the lumbar region of [Braun's] spine to hern[i]ate causing sciatica, cut [Braun's] face to the point of bleeding, then us[ed] restraints to purposefully cause physical pain.

2

(*Id.* ¶ C.)

Braun asserts that Defendants then denied Braun healthcare services and "lied to nursing staff as to [Braun's] injuries to [his] body that required medical attention." (*Id.* ¶ D.) Braun was left in a cell with "inadequate" heating and clothing, access to water was shut off, and Braun was refused a shower. (*Id.* ¶ E.) Braun also asserts prison healthcare services were never notified of Braun's "hunger strike and starved and deprived [him] of all food or water for four complete days" before he was transferred to another prison. (*Id.* ¶ F.) Defendants "falsified reports in order to cover up their unlawful use of force and attempted to kill [Braun] by starvation." (*Id.* ¶ G.) Finally, Defendants refused to give Braun his legal mail, contact legal counsel, speak to his therapist upon request, or speak to CIT.[1] (*Id.* ¶ H.) Braun asserts these acts were all retaliation for his initiation of a hunger strike. (*Id.* ¶ I.)

Braun brings suit against Defendants in their official and personal capacities. (*Id.* at 3.) Braun requests injunctive relief of a trial and immediate placement into administrative segregation to protect him from further retaliation. (*Id.*) Braun also requests that criminal and civil charges be filed against Defendants. (*Id.*) Finally, Braun requests $1.5 million in damages for Defendants' "unlawful use of force, physical and emotional injury . . . , and violation of his constitutional rights." (*Id.*)

---

[1] There is no explanation what "CIT" stands for, but it may mean "Crisis Intervention Team."

### III.   ANALYSIS

#### A.   Screening Requirements

Braun devotes nearly all of his responsive briefing to argue that the screening requirements of 28 U.S.C. § 1915A bar Defendants from bringing a motion to dismiss. This is not the case. Section 1915A requires federal courts to screen complaints filed by prisoners. This review is limited because it is performed "without the benefit of the ordinary adversarial process." *Jackson v. Dayton*, Case No. 15-cv-4429 (WMW/TNL), 2016 WL 11198354, at *3 (D. Minn. Dec. 16, 2016). "[E]very court to have considered the question has concluded that 'the sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring.'" *Id.* (quoting *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007)). To conclude otherwise "would deprive Defendants of the basic procedural right to challenge the sufficiency of the pleadings." *James v. Perez*, 2012 WL 5387676, at *2 (E.D. Cal. Nov. 1, 2012). As such, the Court rejects Braun's objection to Defendants' Motion to Dismiss and will address the arguments raised in the Motion to Dismiss.

#### B.   Rule 8

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011) ("A complaint must be concise, and it must be clear."). It is Braun's burden, "under both Rule 8 and Rule 11, to reasonably investigate [his] claims, to research the relevant law, to plead only viable

4

claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Gurman*, 842 F. Supp. 2d at 1153. Thus, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Defendants assert Braun's operative complaint fails to satisfy Rule 8 because they are "left to guess what Defendant allegedly did what." (Dkt. 29 at 5.) The Court disagrees. Paragraph A notes that Defendants Kriha, Skrypek, and Halverson were informed of Braun's hunger strike orally or in writing. (Dkt. 9 ¶ A.) Paragraph B asserts that Defendants Hanson, DeMars, Mitchell, Sunde, Eitel, Gephart, Meemken, Meyer, Sutlief, and Gavin placed Braun in another cell, deprived him of his legal materials, and denied him a shower. (*Id.* ¶ B.) Paragraph C, the paragraph that Defendants specifically assert is unclear which defendants were involved, is quite clear. Paragraph C refers to "the above-named defendants in Paragraph B"—that is, Defendants Hanson, DeMars, Mitchell, Sunde, Eitel, Gephart, Meemken, Meyer, Sutlief, and Gavin—as the defendants involved in the physical harm allegedly suffered by Braun. (*Id.* ¶¶ B-C).

All of Braun's claims following Paragraphs A, B, and C, however, refer to the "above-named defendants" without a particular qualifier, making it ambiguous as to whether it relates to the ten defendants in Paragraphs B and C or all thirteen defendants named in the Second Amended Complaint. While Braun could have been clearer in addressing who was specifically responsible for each and every act, this is not a kitchen-

5

sink complaint that spans dozens of pages with myriad claims. Braun's operative complaint only spans three pages and he has limited the universe of actors relevant to his claims. As such, the Court finds no Rule 8 pleading violation.

**C.     Rule 12 Motion to Dismiss**

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 547); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then a court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construction of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

The Court identifies several claims asserted by Braun in his Second Amended Complaint and addresses each in turn.

### 1.     **Access to the Courts**

Braun asserts that, following his declaration of a hunger strike, he was placed in a cell where he was deprived of all legal mail and materials and was prohibited from contacting legal counsel. (Dkt. 9 ¶¶ B, H.)

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007).

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*Id.* at 680.

Here, Braun has failed to plead an access to the courts claim. Braun asserts that the deprivation of his legal materials and access to counsel occurred following his declaration of a hunger strike. Braun's complaint states that he began the hunger strike to force prison officials to hold a press conference to "admit[] to the unlawful acts they had been commit[t]ing." (Dkt. 9 ¶ A.) Even assuming these two are linked, Braun still fails to plead sufficient factual matter to state a claim to relief. He does not identify the underlying legal claim he was pursuing and this vague accusation that prison officials were committing unlawful acts deprives the Court of any ability to determine that it was a nonfrivolous and arguably meritorious legal claim. Further, while Braun asserts that he was deprived of all legal mail and materials, it is unclear whether his then-existing legal mail and materials were taken from him, or if he was denied the ability to generate and access new legal mail and materials. As such, this claim should be dismissed.

### 2. Excessive Force

Braun asserts that, in the process of moving him to a new cell, his shoulder was dislocated, chemical deterrent was administered twice, he was pushed down a flight of stairs, his wrist was broken causing nerve damage, a lumbar disc was herniated causing sciatica, his face was cut and bled, and restraints were used to purposefully cause pain. (Dkt. 9 ¶ C.) Staff allegedly falsified reports to cover up their use of force. (*Id.* ¶ G.)

8

"The Constitution, itself, makes no specific reference to 'excessive force.'" *Martin v. Benson*, Case No. 09-cv-195 (DSD/RLE), 2010 WL 2925116, at *6 (D. Minn. June 14, 2010), *report and recommendation adopted by* 2010 WL 2925104 (D. Minn. July 21, 2010), *aff'd* 407 F. App'x 986 (8th Cir. 2011) (per curiam). "However, it is well established that the Constitution prohibits governmental authorities from using excessive force against individuals who are being held in custody." *Martin*, 2010 WL 2925116, at *6. For prisoners, this protection arises under the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.*

An excessive force claim must satisfy two requirements, one objective and one subjective. *Irving v. Dormire* held that "[t]he first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." 519 F.3d 441, 446 (8th Cir. 2008) (cleaned up). "The extent of injury may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

Defendants only challenge this claim on the grounds that it is "simply not plausible that 13 (or 10) individuals together were responsible for the alleged actions as

9

common sense dictates that so many people could not have committed each alleged act together." (Dkt. 29 at 6.) The Court disagrees with the premise of Defendants' argument. Taking the facts pleaded as true, and considering the liberal *pro se* interpretation, Braun alleges sufficient facts to support a claim for excessive force. To make the assessment that the number of persons involved make Braun's claim implausible invites too much weighing of the facts on a motion to dismiss. Braun alleges extremely serious injuries—a dislocated shoulder, a broken wrist with nerve damage, a herniated lumbar disc causing sciatica, and a cut face—that would suggest a large amount of force was applied, whether by one person or a large group of them. Moreover, Braun alleges staff then falsified incident reports and hid the extent of Braun's injuries from nursing staff, evincing a sufficiently culpable state of mind. As such, at this pleading stage, Braun has stated a claim for excessive force.

### 3. Deliberate Indifference to Serious Medical Needs

Braun asserts he was denied healthcare services following his transfer to a new cell and that staff lied about Braun's injuries. (Dkt. 9 ¶ D.) Braun asserts that he was deprived of food and water for four days. (*Id.* ¶ F.) Finally, Braun asserts he was denied access to counseling or therapy. (*Id.* ¶ H.)

The Eighth Amendment prohibits deliberate indifference to serious medical needs—i.e., a serious illness or injury—of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Deliberate indifference is "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*; *Weaver*

10

*v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995) ("[A] prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm.").

The deliberate indifference standard has an objective and subjective prong. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). "The plaintiff must prove 'that he suffered from an objectively serious medical need' and 'that Defendants actually knew of but deliberately disregarded his serious medical need.'" *Id.* (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 529 (8th Cir. 2009)). "A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need." *Saylor*, 812 F.3d at 644. "The subjective prong of deliberate indifference is an extremely high standard that requires a mental state of more than gross negligence," requiring a "mental state akin to criminal recklessness." *Id.* (citations and quotations omitted). Thus, the relevant questions here are whether (1) Braun "had [a] serious medical need or whether a substantial risk to h[is] health or safety existed, and (2) whether [Defendants] had knowledge of such serious medical need or substantial risk to [Braun's] health or safety but nevertheless disregarded it." *Nelson*, 583 F.3d at 529.

Taking Braun's allegations as true, the Court concludes he has adequately pleaded a deliberate indifference to serious medical needs claim. Braun alleges a mix of injuries: a dislocated shoulder, a broken wrist with nerve damage, a herniated lumbar disc causing sciatica, and a cut face. Braun also alleges he was denied any healthcare services whatsoever because the staff that caused those injuries lied about the extent of Braun's

11

injuries. Braun also asserts a deprivation of food and water for four days as well as no counseling or therapy services. A broken bone constitutes a serious medical need. *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (per curiam) (broken hand); *Bell v. Voight*, 2015 WL 5257025, at *8 (D.S.D. Sept. 9, 2015) (fractured facial bone). A dislocated shoulder is a serious medical need. *Petrichko v. Kurtz*, 117 F. Supp. 2d 467, 470-71 (E.D. Pa. Oct. 4, 2000); *see Higgins v. Corr. Med. Servs. of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999) (parties did not dispute that a shoulder dislocation is a serious medical need). A herniated disc is a serious medical need. *Williams v. Norris*, 148 F.3d 983, 988 (8th Cir. 1998). Certainly, then, the aggregation of Braun's alleged injuries constitutes a serious medical need. Braun has also successfully alleged that prison guards intentionally denied or delayed access to medical care by lying to medical providers about the extent of Braun's injuries, thus preventing or delaying his access to medical care.

    Defendants attack Braun's claim on the ground that it is implausible for ten persons to be involved in the injuries of a dislocated shoulder, a broken wrist with nerve damage, a herniated lumbar disc causing sciatica, and a cut face, and for those same persons to coordinate to deny access to healthcare. Again, the Court concludes that Braun's allegations are plausible. Defendants' argument is better suited for summary judgment following discovery, rather than on a motion to dismiss where the Court must take the facts pleaded by Braun in the light most favorable to him.

### 4. Conditions of Confinement

Braun asserts he was placed in a new cell with inadequate heating or clothing, access to water was shut off, and he was denied a shower. (Dkt. 9 ¶¶ B, E.) Braun asserts that he was deprived of food and water for four days. (*Id.* ¶ F.)

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations and citations omitted). The Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (quotation omitted). A conditions of confinement claim requires a showing that: "(1) the alleged deprivation is, 'objectively, sufficiently serious,' resulting 'in the denial of the minimal civilized measure of life's necessities,' and (2) that the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety,' meaning that the officials actually knew of and disregarded the risk." *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 834, 837).

Like Braun's access to the courts claim, his conditions of confinement claim fails to provide sufficient factual matter to state a claim for relief. Braun does not allege any time frame with respect to adequate heating or clothing, water access, or shower access. Without the basic parameters to his claim, the Court cannot determine that he has stated a claim for relief. Braun notes that he was transferred to another prison four days following the incident. If the Court were to assume Braun was deprived of adequate heating or clothing, water access, or shower access for four days, this would likely be an

13

insufficient time span for his conditions of confinement claim to survive. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996) (four days without underwear, blankets, or a mattress was not a constitutional violation); *Williams*, 49 F.3d at 444 (four days without clothes, mattress, running water, bedding, mail, hot food, and hygiene supplies not a constitutional violation).

Further, while Braun asserts that he was deprived of food and water for four days, he also asserts that he was voluntarily initiating a hunger strike. The Court can find no caselaw to support an argument than an intentional choice by a prisoner to engage in a hunger strike can lead to liability for prison official in failing to get that prisoner to eat, at least in the early stages of a hunger strike. *Cf. Scott v. Carpenter*, 24 F. App'x 645, 648 (8th Cir. 2001) (noting that prisoners can be expected to bear some responsibility for their own hygiene as relates to deliberate indifference to medical needs claims under the Eighth Amendment). As such, this claim would fail on this ground as well.

### 5. Retaliation

Braun's complaint contains an overarching claim that all his other claims were retaliation for initiating a hunger strike. (Dkt. 9 at 3.)

A retaliation claim requires Braun to show: "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). "[A] hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." *Stefanoff v.*

*Hays Cty., Tex.*, 154 F.3d 523, 527 (5th Cir. 1998) (citing *Texas v. Johnson*, 491 U.S. 397, 401 (1989)); *Arredondo v. Drager*, 2016 WL 3755958, at *15-16 (N.D. Cal. July 14, 2016) (collecting cases, noting that none speak definitively as to the issue of whether a hunger strike qualifies as protected First Amendment speech in the prison setting).

Even assuming the First Amendment protects hunger strike activity in the prison context, Braun has failed to plead sufficient facts related to the reasons for his hunger strike, instead merely referencing vague "unlawful acts." These are the type of naked assertions devoid of further factual enhancement that are insufficient in a pleading. It is impossible for the Court to discern the "particularized message" that the hunger strike was intended to convey. Without more, the Court cannot find Braun's hunger strike was constitutionally protected activity that could serve as the basis for a retaliation claim. As such, Braun's retaliation claim fails.

### 6. Relief Sought

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Public officials may be sued under 42 U.S.C. § 1983 in their official capacity, individual capacity, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)

15

(citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).  Braun sues Defendants in their official and individual capacities.

### a. Injunctive and Prospective Relief

A plaintiff may obtain injunctive relief against an individual defendant in his or her official capacity.  *Murphy*, 127 F.3d at 754.  "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."  *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits); *see Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 959 (D. Minn. 2011) (permitting a request for prospective injunctive relief against defendants in their individual capacities to move forward because "the nature of relief sought by Plaintiff . . . and the alleged roles of the Individual Defendants . . . **make this case unique**," where the "case involve[d] allegations regarding actions taken by the Individual Defendants both within and outside the scope of their official duties.") (emphasis added).

Braun may thus only seek injunctive relief against Defendants in their official capacities.  As such, to the extent Braun seeks injunctive or prospective relief against Defendants in their individual capacities, he fails to state a claim.

16

Braun requests that criminal and civil charges be filed against Defendants for the claims he makes. "A private plaintiff cannot force a criminal prosecution because the authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Herzog v. Brown*, 2009 WL 1649240, at *2 (D. Neb. June 9, 2009) (quoting *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996)); *Cragoe v. Maxwell*, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012); *Ray v. Dept. of Justice*, 508 F. Supp. 724, 725 (E.D. Mo. 1981) ("It is well settled that initiation of federal criminal prosecution is a discretionary decision within the Executive Branch not subject to judicial compulsion.") (*citing United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965); 28 U.S.C. § 547(1)). Thus, Braun's request that criminal and civil charges be brought against Defendants fails.

Braun also requests immediate placement into administrative segregation. A prisoner enjoys no constitutional right to a particular place of confinement. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). Prisoners do not have the right to their choice of cells; transfers within a prison and to other prisons are within the discretion of prison officials. *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (per curiam). As such, this claim for relief fails.

Finally, Braun requests a trial, but it is not clear if he is demanding a trial in this matter, a trial for Defendants on the criminal or civil charges he wants brought, or a trial on the underlying conduct he asserts constituted the "unlawful acts" for which he initiated the hunger strike. As already stated, the Court has no authority to require the initiation of criminal and civil charges, nor can it offer a judicial decision on matters not

17

presented. Thus, the Court interprets Braun's request as a demand for a jury trial on his present claims and will address it as this case proceeds.

### b. Damages

"A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. The Eleventh Amendment bars suits against a state or its agencies. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). "In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

Here, Braun may only seek damages against Defendants in their individual capacities. Thus, to the extent Braun seeks monetary relief against Defendants in their official capacities, he fails to state a claim.

### 7. Summary

Braun has failed to plead sufficient factual matter to state a claim for relief as to his access to the courts, conditions of confinement, and retaliation claims. As such, these claims should be dismissed. Braun has successfully pleaded his excessive force and deliberate indifference to serious medical needs claims, and those claims should move forward to discovery. Braun's request for injunctive or prospective relief against

18

Defendants in their individual capacities, request that criminal and civil charges be brought against Defendants, request to be immediately placed in administrative segregation, and request for monetary relief against Defendants in their official capacities all lack legal merit and should be dismissed.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Defendants' Motion to Dismiss (Dkt. 28) be **GRANTED IN PART** and **DENIED IN PART** as discussed herein.

2. Plaintiff Nathan Braun's Motion to Object (Dkt. 38) be **DENIED**.

Date: January 27, 2020                              *s/Elizabeth Cowan Wright*
                                                    ELIZABETH COWAN WRIGHT
                                                    United States Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).